**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.                                                                      Criminal No: 07-0098 (PLF)

JAMES T. WHITE

### SENTENCING MEMORANDUM

  The Defendant, by and through his attorney, Barry M. Johnson, respectfully submits this Memorandum in Aid of Sentencing in the above-captioned matter and in furtherance thereof states as follows:

### I.  INTRODUCTION AND BACKGROUND

  On May 29, 2007, the Defendant, James T. White, pled guilty to Count One of a Superseding Indictment, charging him with Bank Embezzlement in violation of 18 U.S.C., §656. The indictment alleged conduct which occurred on or about April 10, 2006. Sentencing is presently scheduled for October 15, 2007 before the Honorable Paul L. Friedman.

  Mr. White confessed to his wrongdoing, voluntarily accepted responsibility without any criminal actions pending, and voluntarily agreed to fully repay the bank all of the money and did, in fact, fully repay all of the money on April 28, 2006.

  In February of 2007, Mr. White was contacted by the U.S. Attorney's Office regarding the pending criminal indictment.  Mr. White subsequently entered into a plea agreement in a very timely manner, thereby saving the Government time and expense.

### II. ADVISORY SENTENCING GUIDELINE CALCULATIONS

 A Pre-Sentence Investigation Report (the "PSI") was completed.  The PSI has classified the Final Adjusted Offense level as a 16 with an Advisory Sentencing Guideline Range of 21 to 27 months. This calculation is based upon a base offense level of 7, with a 10 level increase for the

1

Specific Offense Characteristic of loss between $120,000 and $200,000.  There was an additional 2 level enhancement included for Abuse of Trust.  Because of the Defendant's timely and prompt acceptance of responsibility and his prompt entry of a guilty plea, the Pre-Sentence Report recommends a 3 level reduction for the Final Adjusted Offense Level of 16.

However, pursuant to the Plea Agreement, the Defendant and the Government each agreed or reserved the right to make arguments to the Court about the applicability of the adjustment under § 3B1.3 for Abuse of Position of Trust.  Accordingly, the appropriate Advisory Sentencing Guideline calculations are subject to argument and contingent upon the findings of this Honorable Court.  Accordingly, the Defendant agrees that if the 2 point enhancement is deemed appropriate by the court, then based upon a total offense level of 16 and a criminal history category of I, the Advisory Guidelines range for imprisonment is 21-27 months.  On the other hand, if this Honorable Court determines that the 2 point enhancement is inapplicable, then the total offense level would be 14, and a criminal history category of I, the Advisory Guidelines range for imprisonment is 15-21 months.  USSG Chapter 5, Part A.

Notwithstanding any of the foregoing, the Defendant respectfully submits that the Advisory Guidelines, when considered with other sentencing factors, such as those contained in 18 U.S.C., §3553(a), strongly support the Defendant's request for a sentence that is significantly below the Advisory Guideline range.  Such a sentence would fully meet all the necessary objectives of sentencing.  In addition, the Defendant is respectfully requesting that this Honorable Court fashion a sentence that would permit Mr. White to continue his efforts at meaningful employment, as well as continuing his many responsibilities as a parent to his two children.

### III.     ABUSE OF POSITION OF TRUST IS INAPPLICABLE

The Defendant, Mr. White, argues that the abuse of a position of trust enhancement is improper because the "abuse of trust" is an essential element that is underlying the specific offense charged. It is well settled that when "abuse of trust" is included in either the base offense level or in the specific underlying offense that the enhancement cannot be applied. In United States v. Levy, 992 F.2d 1081, 1084 (10th Cir. 1993), the court held that the abuse of a position of trust guideline "directs that we look to the base offense level and the specific offense characteristics assigned by the guidelines to the crime of conviction." In this case, it is unequivocally clear, that the specific offense characteristic, by its very definition and nomenclature does in fact account for an abuse of trust. See id.   Mr. White has pled guilty to violating 18 U.S.C. § 656.  Theft, embezzlement, or misapplication by bank officer or employee which reads:

> Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) (!1) of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully

> misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The Government's unfounded belief and argument that the "abuse of trust" enhancement should be applied rests on one fact: that Mr. White's position as branch manager held him in a position of trust which allowed him to facilitate the offense. However, this analysis is flawed and misguided. But for Mr. White's position as a branch manager, the specific elements of §656 would not be met. By its very definition and titling, the offense of violation of §656 requires that one be a bank officer or employee. Being a "bank officer or employee" is an essential element to the applicability of §656. It is inappropriate to use this elemental factor of Mr. Whites position as a bank officer or employee to subject Mr. White to a double penalty for commission of the specific offense of the underlying crime of §656 and the enhancement which is already contemplated in the specific offense or underlying crime of §656. The U.S. Supreme Court has long held that this enhancement may not be applied when the elements of the underlying offense include abuse of a position of trust. United States v. Chimal, 976 F.2d 608, 613 (10th Cir. 1992).

## IV. SENTENCING FACTORS FOR CONSIDERATION

Defendant's shall be sentenced so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553 (a) (2) to the extent that they are applicable in light of all the circumstances of the case.

Under 18 U.S.C. § 3553 (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -

   (1) the nature and circumstances of the offense and the history
      and characteristics of the defendant;

   (2) the need for the sentence imposed -

      (A) to reflect the seriousness of the offense, to promote
         respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training,
         medical care, or other correctional treatment in the most effective manner;

### 1. Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The Defendant and his wife divorced in 2005. In an attempt to satisfy the agreed to divorce settlement, the Defendant obtained a hard money loan in the amount of $120,000. The Defendant then sought to refinance his home to repay the hard money lender. The refinance took two weeks longer than was anticipated and the hard money lender threatened to foreclose on the Defendant's home if the $120,000 was not repaid by April 10, 2006. Feeling desperate, and with

a pending refinance only a couple weeks away, the Defendant scrambled to prevent the foreclosure. After all other attempts to come up with the $120,000 failed, the Defendant, in a desperate act of bad judgment decided to illegally convert the proceeds from a bank customer's CD for the purpose of satisfying the debt obligation and preventing the foreclosure. With full belief that he would be able to replace the money upon the completion of his refinance in two weeks, Mr. White did not believe, nor did he intend for anyone to be hurt by his actions. However, within only one week of the incident occurring, the bank became aware of Mr. White's actions. When the bank confronted Mr. White, he never attempted to sidestep responsibility. He willingly admitted his mistake and wrongdoing, agreed to a mutual termination of employment and pursuant to an executed confessed judgment agreed to repay the money within two weeks or no later than April 28, 2006.

Mr. White makes no excuses for his wrongful conduct. Mr. White does, however, want the Court to understand the difficult circumstances that led him to yield to this poor judgment. Mr. White's conduct in this case was aberrant from every other aspect of his life. The conduct here, did not, and does not, reflect the manner in which Mr. White conducts his personal and business activities and was simply and totally out of character for him. Throughout his career, Mr. White has always possessed and utilized the utmost integrity in all of his affairs and business dealings. Mr. White is extraordinarily humiliated and embarrassed by his extremely poor decision making in this case. Mr. White is hopeful that the Court will take into consideration, while imposing sentence, these factors which, while not justifying his decision making, help explain why an otherwise honorable man with no history of unlawful conduct allowed himself to get involved in this unlawful activity. Mr. White fully complied with his obligations and repaid all of the proceeds within two weeks.

## 2.  18 U.S.C. § 3553(a)(2) (A)-(D)

Since Mr. White's relationship with the bank was terminated, he has sought to re-direct his business ventures. He is making productive use of his time and has been actively involved in working with Premier 1 Mortgage as a loan officer and was recently assigned to the position "team leader."  Still further, Mr. White has been significantly instrumental in the business development aspects of helping to build and grow Premier 1 Mortgage.  Mr. White's success thus far has earned him the latitude to explore both vertical and horizontal business integration models for the success of Premier 1 Mortgage.  Obviously, his ability to ensure the continued success of his business will be affected by whether he can be physically present to remain involved with these matters.  A sentence of incarceration would displace Mr. White from the career advances and opportunities that are presently before him.

Mr. White holds a BA from Howard University and has completed all the educational requirements for his Series 6 and 7 licensure and certification.  Accordingly, a period of incarceration would serve no correctional purposes of providing Mr. White with any needed educational or vocational training.

Mr. White recognizes that this Court must impose a punishment.  We respectfully request that this Honorable Court consider all the aforementioned factors when determining the appropriate sentence and takes into account that Mr. White has already paid the restitution and did so within only a few weeks of his actions.  Further, we respectfully request this Court consider the need for Mr. White's continued involvement in his new business and with the raising of his children.

In lieu of a period of incarceration, this Court has a number of alternatives that would permit it to impose a reasonable sentence that fairly reflects the nature of Mr. White's conduct

but also takes into consideration his entire life and background. The imposition of a short split-sentence that included community confinement as a substitute for imprisonment or the imposition of a term of probation with house arrest and work release would permit Mr. White to both receive a reasonable punishment that reflects the seriousness of the offense, promotes respect for the law, affords adequate deterrence to criminal conduct, protect the public from further crimes of the Defendant and provide just punishment for the crime, while also considering all the mitigating circumstances and sentencing factors that surround this case and permitting Mr. White the opportunity to continue with a very productive life of contributing to the community, raising his children, supporting his family and developing his business ventures.

## V.     PERSONAL AND FAMILY FACTORS
## AND CONSIDERATIONS

Under the Commentary to 5H1.6. <u>Family Ties and Responsibilities</u> of the Federal Sentencing Guidelines, there are several circumstances a court may consider in fashioning an appropriate sentence for a defendant which include in Subsection (B):

(B) <u>Departures Based on Loss of Caretaking or Financial Support</u>.—A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:

(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv) The departure effectively will address the loss of caretaking or financial support.

Mr. White currently earns roughly $90,000 per year which he uses to support and provide for his family which includes a fiance and two minor children. Although, Mr. White shares joint legal custody of his children along with his ex-wife, Mr. White has physical custody of the children and Mr. White's income is the primary source of the children's care and the sole source of providing for their current home. Mr. White's two children include James, age 16 and Kristen, age 13. Mr. White is very close to his children and is extremely involved in each of their lives. His son James, 16, is currently preparing for the SATs and Mr. White is very involved in this process and helping to prepare his son for college. Were Mr. White to be sentenced to a period of incarceration, he and his children along with his fiancé would lose their home, and significantly, possibly irreparably, disrupt a very strong and productive family unit. Thus far, Mr. Whites children do not suffer from any addictions nor have they had any negative contact with the law. This is largely in part to the strong presence and role that Mr. White plays in their lives.

As the Pre-Sentence Report notes, Mr. White has led a crime free life up to this point. He is an extremely loving father and is greatly respected by his fiance and his children. As the Court can observe when it hears from him during the course of the sentencing hearing, he is a man who is truly remorseful for his conduct. He has a hard time justifying to himself how an individual, such as himself, who has never knowingly cheated anybody else, allowed himself to exercise such poor judgment, even in time of heightened crisis and imminent foreclosure. Nevertheless,

he recognizes his poor judgment and the criminal nature of his conduct and is prepared to positively deal with whatever sentence the Court deems to be reasonable.

This Honorable Court has received several letters from family and friends on behalf of Mr. White. Mr. White hopes that this Honorable Court consider these letters in determining a reasonable sentence. As the Court can see from these letters, Mr. White is held in the highest regard by many people in his life who love and respect him. These are individuals who have known Mr. White over a period of time. Each of these people can more properly put in perspective his qualities as a human being and confirm that his failures in judgment in the instant matter were truly aberrant and do not reflect the true quality of his character.

## VI.     SENTENCING RECOMMENDATION

As previously noted, while the Advisory Guidelines suggests a sentence within the 15-21 month range or either the 21 to 27 month range, 18 U.S.C., §3553(a) permits the Court to consider other factors in determining the reasonableness of a sentence. Consideration of the Defendant's lack of any prior record, his strong and meaningful family ties, the aberrant nature of Mr. White's judgment made in this case and his immediate and voluntary repayment of the full restitution are all mitigating factors that support a sentence well below the Advisory Guidelines range.

As the Court considers an appropriate sentence in this matter, it is respectfully submitted that a split sentence or a sentence of probation with home detention is sufficient to accomplish that purpose. Either type of sentence advances all the purposes of sentencing, by imposing restrictions on Mr. White's liberty and serving the need for punishment, while at the same time, permitting the Court to give some degree of lieniency in light of the mitigating circumstances involved in this case.

For the reasons set forth in this Memorandum, it is respectfully requested that this Honorable Court determine that a reasonable sentence in this case is a sentence well below the Advisory Guideline range and a sentence that does not require incarceration, but instead substitutes community confinement and a period of probation thereafter. Mr. White respectfully requests that this Honorable Court fashion a sentence that will permit him to continue to work and to remain in or close to his family and community.

    Respectfully Submitted,

_____
Barry M. Johnson
D.C. Federal Bar No. MD15119
P.O. Box 1578
Bowie, Maryland 20717
(301) 343-1124

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Sentencing Memorandum was mailed, postage prepaid, this 10th day of September, 2007 to:

AUSA Louis Ramos
Office of the United States Attorney
555 4th Street, NW
Washington, DC 20530

_____
Barry M. Johnson