**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 07-098 (PLF) |
| | : | |
| v. | : | |
| | : | |
| **JAMES WHITE,** | : | |
|     **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court, sentence the defendant to a period of incarceration at the low end of the United States Sentencing Guidelines ("USSG" or "Guidelines") range of 21-27 months.

### BACKGROUND

On May 29, 2007 the defendant pled guilty to one count of bank embezzlement in violation of 18 U.S.C. § 656. The facts of the offense are described in detail in the statement of offense, however the following is a brief description of the offense.

At the time of the offense, on or about April 10, 2006, the defendant was employed as a manager at the Mercantile Potomac Bank located at 1629 K Street, NW. The defendant then used his position as a manager to withdraw $126,800 from a certificate of deposit ("CD") account belonging to Sleiman El-Boueri. The defendant then took those funds that were withdrawn from Mr. El-Boueri's CD and directed a bank employee to issue a Mercantile Potomac Bank cashier's check in the amount of $126,800. The cashier's check was made payable to a law firm, Halcomb & Straila, LLC, that was representing an individual, Mark Herb, to whom the defendant owed

approximately $120,000. That check was then delivered to Halcomb & Straila, and subsequently deposited. All of this was done without Mr. El-Bourri's authorization or consent.

A Pre-Sentence Investigation Report ("PSI") was prepared for the defendant. The PSI determined the base offense level to be 7 under USSG §2B1.1(a)(1), with a 10 level increase under USSG § 2B1.1(b)(1)(F) because the offense involved a loss of between $120,000 and $200,000. The PSI further determined that a 2 level enhancement applied for abuse of trust under USSG § 3B1.3. This made the adjusted offense level 19. The PSI then reduced the adjusted offense level by 3 levels due to the defendant's acceptance of responsibility under USSG §§ 3E1.1(a) and 3E1.1(b). The PSI calculated that final total offense level to be 16. The defendant did not have any criminal convictions in his background, establishing a criminal history category of I. Based on the defendant's total offense level of 16 and criminal history category of I, the Guidelines call for a term of imprisonment within a range of 21 to 27 months.

On September 10, 2007 the defendant filed a sentencing memorandum in which he argues that the abuse of trust enhancement should not apply with respect to calculating the defendant's total offense level, and that a sentence outside of the Guidelines is appropriate when the factors set forth in 18 U.S.C. 3553(a). Those arguments are addressed below.

## ABUSE OF TRUST

The defendant pled guilty on May 29, 2007 pursuant to a plea agreement that was filed with the Court on the day of the plea hearing. In that plea agreement, which is binding on the defendant and the government, the parties agreed that a 2 level

enhancement for abuse of trust under USSG § 3B1.3 applied to the defendant's offence conduct in this case.  <u>See</u> Plea Agreement in *United States v. James White*, 07-098 (PLF), dated May 22, 2007, paragraph 5.  The plea agreement specifically states that "pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, your client and the Government agree, that at a minimum, the following offense level applies to your client's conduct . . . U.S.S.G. § 3B1.3   Abuse of Trust   + 2 . . . ."  <u>Id.</u>  The agreed upon estimated total offense level in the plea agreement is 16.  <u>Id.</u>  Therefore, the defendant's argument in his sentencing memorandum that the abuse of trust enhancement does not apply is in violation of the plea agreement and inappropriate.

The Court, however, is not bound by the terms of the plea agreement.  Even if the Court were to consider the defendant's arguments in his sentencing memorandum that he abuse of trust enhancement does not apply in this case, those arguments fail.

USSG § 3B1.3 states that the abuse of trust enhancement does not apply if "an abuse of trust or skill is included in the base offense level or specific offense characteristic."  The defendant first cites to <u>United States v. Levy</u>, 992 F.2d 1081 (10th Cir. 1993) to support his position.  In <u>Levy</u>, the Tenth Circuit held that the abuse of trust enhancement under USSG § 3B1.1 "directs that [the Court] look to the base offense level and specific characteristics assigned by the guidelines to the crime of conviction.  It does not direct us to the elements of the offense itself."  <u>Levy</u>, 992 F. 2d at 1084.  As in <u>Levy</u>, the base offense level in this case was determined by looking at USSG § 2B1.1, which addresses "Larceny, Embezzlement, and Other Forms of Theft."  USSG § 2B1.1 covers many forms of theft, but does not take into account abuse of trust.  The Tenth Circuit in

Levy therefore concluded, as should this Court, that "[t]he specific offense characteristics listed in § 2B1.1 of the likewise do not include an abuse of trust . . . [and] neither the offense level nor the specific offense characteristics assessed against [the defendant] listed in § 2B1.1 likewise to not include an abuse of trust." Id.

The next case cited by the defendant is United States v. Chimal, 976 F.2d 608 (10th Cir. 1992). In that case, the court found that the abuse of trust adjustment was appropriately applied against a comptroller of a company because she "essentially had complete control over the accounting department and rarely had to report her activities to a superior," and because her position of trust substantially facilitated her crime by allowing her activities to avoid detection. Chimal, 976 at 614.

In this case, the defendant's position as a manager at the bank allowed him to withdraw the funds from Mr. El-Bourri's account. His position also allowed him to direct a bank teller to take those funds and apply them towards a cashier's check that was made out to the law firm representing Mark Herb, the person to whom the defendant owed money. While this offense was immediately detected by other bank officials, this does not undermine the fact that the defendant's position as a manager in the bank allowed him to withdraw those funds from the CD and direct a bank teller to apply those funds towards the cashier's check.

### DEFENDANT SHOULD BE SENTENCED AT THE
### LOW END OF THE GUIDELINESRANGE OF 21-27 MONTHS

The Government recommends that the Court sentence the defendant within the Guidelines range of 21-27 months. Such a sentence would be reasonable and would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the

public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

## CONCLUSION

The defendant should be sentenced at the low end of the Guidelines range of 21-27 months.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney

_____
LOUIS RAMOS
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4243
Washington, DC 20001
Phone: 305-2195; Fax: 616-3782
D.C.  Bar No. 472-176